## Case No. 15,935.
UNITED STATES v. ONE HUNDRED AND FORTY-SIX THOUSAND SIX HUNDRED AND FIFTY CLAPBOARDS.

[4 Cliff. 301; [1] 20 Int. Rev. Rec. 98.]

Circuit Court, D. Rhode Island. June Term, 1874.

CUSTOMS DUTIES — FALSE VALUATION — INTENT — COLLATERAL FACTS.

1. In cases of false valuation of goods in the invoice, legal evidence of other fraudulent acts

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

of a similar nature committed at about the same time, and when the same motive may be supposed to exist, is admissible to show the intent of the actor with respect to the matter charged against him in the information.

2. Positive proof of fraudulent acts is not generally to be expected, and the law allows a resort to circumstantial proof to ascertain the truth.

3. When the intent or guilty knowledge of a party is material to the issue, collateral facts tending to establish such intent or knowledge, are properly admissible in evidence.

4. In this case it was proper to show that the value given in the invoice was less than the actual market value of the merchandise, and that the party making the entry knew that fact. Therefore proof of correct entries made about the same time, of the same kind of goods, by the claimant, was admissible to show that he knew the real value of the merchandise.

[Error to the district court of the United States for the district of Rhode Island.]

Libel of information in rem, by the United States attorney, against 146,650 clapboards [Israel Meritt, claimant], seized by James Shaw, Jr., collector of the port of Providence, in this district. Trial in the district court by jury. Verdict for claimant. [Case unreported.] Error to the district court. Due seizure on land was made of the merchandise described in the record, and the district attorney on the 10th of June, 1871, filed in the district court for this district an information against the same, claiming that it was forfeited to the United States, for the reason therein set forth, as follows: (1) That the merchandise was falsely valued, in the invoice presented to the collector, at a less price than the actual market value thereof, at the time and place when and where the same was procured or manufactured; that the said invoice was then and there made up, with intent, by the said false valuation, to evade and defraud the revenue. (2) That the said owner, consignee, or agent, then and there knowingly entered, or attempted to enter, the merchandise by means of a false invoice, or by a false certificate of a consul, vice-consul, or commercial agent, or by means of an invoice which then and there did not contain a true statement of all the particulars required by the act to prevent and punish frauds upon the revenue. 12 Stat. 738. Service was made, and the claimant appeared and filed an answer, denying all the material allegations of the information. Issue was duly joined upon the allegations set forth in the information, as denied in the answer, and the parties went to trial. Evidence was introduced by both parties, and the jury returned their verdict for the claimant. Exceptions were taken by the United States to the ruling of the court, in the progress of the trial, and to the instructions given by the court to the jury. Two errors were assigned by the United States: (1) That the court erred in refusing to admit the invoice dated June 6, 1870, offered by the district attorney, as tending to show that the claimant shipped from the same port,

about that time, a cargo of clapboards of a quality inferior to that of the cargo seized, and entered the same at the port of Providence, at a much higher valuation than the invoice value of the cargo seized, it appearing that the market value of such lumber at the two periods was substantially the same. (2) That the district judge erred in the instruction given to the jury that they could not return a verdict for the United States, even if they found that the invoice value of the merchandise, as given in the invoice presented to the collector, did not conform to the value of such goods in the actual markets of the country of production, unless that they should also find that such discrepancy was not the result of honest error on the part of the owner, consignee, or agent, in respect to matters of law or fact; but that it was made knowingly, and with design to evade the payment of the duty which he knew was legally chargeable on the said merchndise.

John A. Gardner, U. S. Atty.
Samuel Currey and Wingate Hayes, for claimant.

CLIFFORD, Circuit Justice. Goods imported into the United States, subject to ad valorem duty, could not be admitted to entry under the act of March 1, 1823, unless a true invoice of the same was presented to the collector at the time of the entry, except as provided in section 2 of that act; and section 4 of the act of May. 28, 1830, provided that if any package shall be found to contain any article not described in the invoice, or if such package or invoice be made up with intent, by a false valuation or extension, or otherwise, to evade or defraud the revenue, the same shall be forfeited. 3 Stat. 729; 4 Stat. 410. Regulations of a similar nature, but much more minute in their character are contained in section 1 of the act of March 3, 1863, and the same section provides that if the owner, consignee, or agent shall knowingly make or attempt to make an entry thereof by means of any false invoice or false certificate of a consul, vice-consul, or commercial agent, or of any invoice which shall not contain a true statement of all the particulars required, or by means of any other false or fraudulent document or paper, or of any other false or fraudulent practice or appliance whatsoever, said goods or their value shall be forfeited and disposed of as other forfeitures, for violation of the revenue laws. 12 Stat. 738.

Cases of fraud like the one charged in the information are among the well-recognized exceptions to the general rule, that other wrongful acts of the respondent are not admissible in evidence on the trial of the particular charge immediately involved in the issue. Legal evidence of other fraudulent acts of a similar nature, if committed at or about the same time, and when the same motive may reasonably be supposed to exist, are admissible in cases of this description, with a view to establish the intent of the actor in respect to the matter charged against him in the information. Decided cases may be found which go further, and hold that such evidence is admissible as affording a ground of presumption to prove the agency of the respondent in the matter charged; but whether so or not, it is clearly competent to show the intent or guilty knowledge of the actor in respect to the matters immediately involved in the issue on trial. Cary v. Hotailing, 1 Hill, 311; Irving v. Motley, 7 Bing. 543; Rowley v. Bigelow, 12 Pick. 307; Castle v. Bullard, 23 How. [64 U. S.] 186. Intent and knowledge were distinctly put in issue by the pleadings, and in such cases it is allowable, as well in civil as in criminal cases, to introduce evidence of other acts and doings of the respondent, of a kindred character, in order to illustrate or establish his intent, knowledge, or motive in the particular act directly in judgment. All experience shows that such must be the rule, as in no other way would it be practicable, in many cases, to establish the real intent or motive of the actor, especially in transactions where the single act, if taken by itself, would not be decisive either way.

Guilty knowledge is in many cases an essential ingredient of crime, and in the trial of such cases, evidence of the commission of other kindred offences about the same time is always admitted as tending to prove that ingredient of the charge. Many cases of fraud also require the application of the same principle, as the charge of fraud usually involves the motive and intent of the party charged, which can only be deduced from a great variety of circumstances, no one of which is absolutely decisive. Positive proof of fraudulent acts is not generally to be expected, and for that reason, among others, the law allows a resort to circumstances as the means of ascertaining the truth. Whenever the necessity arises for a resort to circumstantial evidence, either from the nature of the inquiry or the failure of direct proof, objections to testimony on the ground of irrelevancy are not favored, as the force and effect of circumstantial facts, usually and almost necessarily, depend upon their connection with each other. Circumstances altogether inconclusive if separately considered, may, by their number and joint operation, especially if corroborated by moral coincidences, be sufficient to constitute conclusive proof. Wood v. U. S., 16 Pet. [41 U. S.] 360. Hence, it is held, that whenever the intent or guilty knowledge of a party is material to the issue, collateral facts, tending to establish such intent or knowledge are properly admissible in evidence. U. S. v. Four Cases Printed Merinoes [Case No. 15,146]; Bottomley v. U. S. [Id. 1,688]; Alfonso v. U. S. [Id. 188]; Taylor v. U. S., 3 How. [44 U. S.] 207; Buckley v. U. S., 4 How. [45 U. S.] 259. Concede all that, and still it is contended that the

evidence offered was properly rejected because the entry of the merchandise described in the invoice offered in evidence was not made about the time of the supposed fraudulent act charged in the information, and the argument is, that the evidence of other fraudulent acts is never properly admissible, even to show a criminal or fraudulent intent or guilty knowledge of the respondent, unless the acts were of a kindred nature, and were done and committed about the time of the alleged criminal or fraudulent act, for which the accused or respondent is on trial. But the evidence rejected in this case was not offered to prove a prior criminal or fraudulent act, nor does the offer of proof, as disclosed in the bill of exceptions, assume that the prior entry was made to defraud the revenue, or to evade the payment of the lawful duties. On the contrary, the offer of proof assumes that the prior entry was made in good faith, and that the merchandise described in the invoice was correctly valued. Plainly the evidence was not offered for any such purpose, but to show that the importer well knew that the merchandise imported was of much greater value in the markets of the country where it was produced than the price given in the invoice presented to the collector. Beyond all doubt, it was proper to show that the value as given in the invoice was less than the actual market value of the merchandise, and that the party making the entry knew that fact.

Direct proof of those allegations could hardly be expected, and it follows that the prosecutor might properly resort to circumstances to support the charge. Great latitude is justly allowed by the law to the reception of circumstantial evidence, whenever a resort to it becomes necessary, either from the nature of the inquiry or the failure of direct proof. Collateral facts may be proved in such a case, though, when considered separately, they are quite insufficient to establish the given hypothesis, if it appears that by their joint operation they tend to support the theory they are offered to sustain. Tested by that rule, it is clear that the evidence offered and rejected had some tendency to prove that the invoice value of the merchandise was less than the market value of the same, and that the importer knew that fact at the time he made the entry, and it is equally clear that if the importer knew what the market value of the merchandise was, it is wholly immaterial when or by what means be acquired such knowledge. It was assumed by the United States, that the price of such merchandise was substantially the same at the two periods, and if such was the fact, it is difficult to see why the evidence was not admissible. They offered to prove that fact, and the ruling having been made with the understanding that, if the evidence was admitted, it would be followed up by proof to that effect, I am of the opinion that the ruling was erroneous and that the ob-

jection to its admissibility should have been overruled. 2 Grah. & W. New Trials, 665; Hill. New Trials, 310. Suppose it were otherwise, still I am of the opinion that the judgment must be reversed, for the reason given in the second error assigned. Much discussion of that proposition is unnecessary, as the instruction given to the jury is directly opposed to the rule adopted by the unanimous decision of the supreme court. Barlow v. U. S., 7 Pet. [32 U. S.] 410; Cambioso v. Maffet [Case No. 2,330]; U. S. v. Eighty-Five Hogsheads of Sugar [Id. 15,037]. Mistake of law in such a case is no defence to an information for a forfeiture, nor is there any thing in the act of congress under which the information in this case was drawn, to take the case out of the general rule established by the authorities cited by the United States.

Judgment reversed, and the case remanded for a new trial.